UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
AUG 0 5 2019
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

SHERRI ERRINGTON,

                Petitioner,

      v.

WARDEN BEDFORD HILLS C.F.,

                Respondent.

**DECISION AND ORDER**

1:17-CV-00258 EAW

## INTRODUCTION

Petitioner Sherri Errington ("Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the basis that she is being unconstitutionally detained in the custody of respondent Warden, Bedford Hills Correctional Facility ("Respondent"). Petitioner is incarcerated pursuant to a judgment entered against her on February 22, 2011, in the Wyoming County Court of New York State ("Wyoming County Court" or the "trial court"). (Dkt. 1 at 1). Petitioner was sentenced to concurrent terms of imprisonment of 15 years, 9 to 18 years, and 5 years, as well as a 5-year term of post-release supervision. (Dkt. 14 at 6-7).

Petitioner contends she was deprived of her constitutional right to the effective assistance of counsel because her trial counsel failed to advise her of her right to testify, and she contends her due process rights were violated because the time periods listed in the state Indictment were too broad to allow her to mount an adequate defense. (Dkt. 1; Dkt. 14). Additionally, Respondent asks that the Court reconsider a May 1, 2019, Order

(Dkt. 16) directing Respondent to obtain an affidavit from trial counsel responding to Petitioner's allegations of ineffective assistance of counsel. (Dkt. 17). For the reasons discussed below, the Court grants Respondent's motion for reconsideration, rescinds the May 1, 2019, Order, and finds that Petitioner has not shown she is entitled to federal habeas relief.

## BACKGROUND

### I. Underlying Crime and Pretrial Proceedings

On August 28, 2009, the Wyoming County Sheriff's Office ("Sheriff's Office") received a 911 call from Tina O'Neil ("O'Neil") to report possible sexual abuse against a minor, T.E.[1] (Dkt. 11-3 at 289). When law enforcement arrived, O'Neil informed them that T.E., who was then 17, told them her biological father Donald Errington had been having sex with her since she was six years old. (*Id.* at 353). T.E. was transported to the police station where Child Protective Services and the Sheriff's Office interviewed her, and later she also spoke to medical staff. (*Id.* at 263; 352). During these conversations, she did not mention Petitioner. (*Id.* at 353).

The Sheriff's Office secured a search warrant for Donald Errington's residence, but they called Donald before entering the home to offer him the opportunity to be present. (*Id.* at 207). Donald did not appear, and on August 31, 2009, he was found dead inside his car, having apparently shot himself in the head. (*Id.* at 216).

---

[1] Because T.E. was a minor victim of a sex offense, she is referred to by her initials. N.Y. Civ. Rights § 50-b.

Also on August 31, 2009, before Donald's body was discovered, the Sheriff's Office interviewed Petitioner, who was T.E.'s stepmother. (*Id.* at 227-29). Petitioner also wrote out a supporting deposition at this time. (Dkt. 11-2 at 95-100). She stated that she was aware of the sexual activity between Donald and T.E. and that she and T.E. had occasionally given Donald blowjobs together, but that she was forced by Donald to do so. (*Id.*). Petitioner left Donald in June 2008 and had been living apart from him, T.E., and her two younger children since then. (*Id.* at 246).

On September 3, 2009, the Sheriff's Office interviewed T.E. to ask about Petitioner's involvement. (Dkt. 11-3 at 355). On September 8, 2009, the Sheriff's Office arranged to interview Petitioner again and videotaped the statement. (*Id.* at 273-74). During the video interview, Petitioner stated she first suspected that sexual activity was occurring between Donald and T.E. when T.E. was eight or nine years old and they were living in Silver Springs, New York. (Dkt. 11-2 at 236). She also said that when she threatened to tell someone what was going on, Donald would threaten to kill her and tell her he would make sure she would never see her kids. (*Id.* at 239). Petitioner further stated that Donald forced her and T.E. to give him oral sex three or four times, and that this behavior continued after they moved to Castille, New York. (*Id.* at 241-42). During Petitioner's interview, the investigator mentioned that T.E. said Petitioner had performed oral sex on T.E. on multiple occasions, and that Petitioner was the one who asked if she could join the sexual activity occurring between T.E. and Donald. (*Id.* at 285-86, 293-94). Petitioner denied both of T.E.'s statements. (*Id.*).

On October 9, 2009, an indictment ("Indictment") was returned in Wyoming County charging Petitioner with two counts of first-degree course of sexual conduct against a child for two different time periods—between 1998 and 2003, and between 2003 and 2005. (Dkt. 11-2 at 7-8). Petitioner was also charged with fourth-degree conspiracy for agreeing to commit first-degree course of sexual conduct against a child, and with first-degree sexual abuse for an incident of sexual misconduct Petitioner was accused of committing against her seven-year old son in the fall of 2007. (*Id.* at 8-9). Before the trial, the conspiracy count was dismissed. (Dkt. 10 at 9). Additionally, Petitioner moved for a bill of particulars asking for the "precise date, time and place of the offenses alleged in each of the counts of the Indictment." (Dkt. 11-2 at 19). The trial court held "the periods covered by these counts are reasonable under the circumstances," but also ordered a bill of particulars be issued with a statement of the substance of the conduct encompassed by the charges. (*Id.* at 35-36).

## II.   Trial

On January 24, 2011, a jury trial commenced before Wyoming County Court Judge Michael F. Griffith. (Dkt. 11-3 at 29). The government called T.E. to the stand, who testified that Donald had sexually abused her for 11 years and that Petitioner had occasionally participated in the abuse. She testified that when she was six, Petitioner, while laughing, poked a popsicle stick into T.E.'s vagina when she was lying blindfolded on the floor, and that during this incident Petitioner also performed oral sex on T.E. (*Id.* at 359). T.E. further testified that during the abuse throughout her childhood, Petitioner would grab her breasts, perform oral sex on T.E., and perform oral sex on Donald with T.E. (*Id.* at

336-37). T.E. could not specify by date or time period when these incidents took place. Additionally, T.E. testified that in the fall of 2007 she saw her little brother "playing" with Petitioner's anus. (*Id.* at 345). She testified that she confronted Petitioner, and that Petitioner told her it was the same thing T.E. did with her father. (*Id.* at 346).

The jury also heard the testimony of Jennifer Paul ("Paul"), whose husband was a friend of Donald's. She testified that she overheard an exchange between Petitioner and T.E. where T.E. asked Petitioner for something, and Petitioner responded by yelling, "Why don't you go fuck your father like you have been." (*Id.* at 383). Paul confronted Petitioner and told her she would contact the authorities if she learned something was going on before speaking with T.E. who assured her that nothing inappropriate was happening. (*Id.* at 383-84).

Additionally, O'Neil testified that on August 28, 2009, T.E. arrived at her home in tears and told O'Neil that Donald had been having sex with her, and O'Neil called 911. (*Id.* at 253-55). She also testified that in the fall of 2009 after Petitioner's arrest, Petitioner frequently went over to O'Neil's house to talk about her pending case, and Petitioner told O'Neil that Donald would force her to perform oral sex on T.E. as well as force her and T.E. to perform oral sex on him together. (*Id.* at 256-57).

The lieutenant from the Sheriff's Office testified, reading Petitioner's supplemental deposition into the record. (*Id.* at 201-08). The jury also heard the investigator who conducted the video interview testify about the interview, and they viewed the video of the statements Petitioner made to him that day. (*Id.* at 304-18).

At the conclusion of the prosecution's case, trial counsel Molly Musarra, Esq. ("trial counsel") moved for a trial order of dismissal, arguing that the timeframes in the Indictment were not sufficient to allow for an adequate defense. (*Id.* at 386-87). The Court denied the motion. (*Id.* at 390).

Petitioner called three witnesses to the stand. A former friend of T.E.'s testified that T.E.'s reputation for truthfulness was "not good." (*Id.* at 394). T.E.'s former boyfriend testified that while she never lied to him, she was known for lying to others. (*Id.* at 397-98). He also testified that T.E. told him about her father having sex with her, but that she never mentioned Petitioner. (*Id.* at 404). Finally, one of T.E.'s former classmates testified that T.E. had a reputation for telling the truth 25% of the time. (*Id.* at 406).

On January 27, 2011, the jury convicted Petitioner on all three counts. (*Id.* at 508-09). On February 22, 2011, the trial court sentenced Petitioner to an indeterminate term of 9 to 18 years on the first count, a concurrent determinate prison term of 15 years with 5 years of post-release supervision on the second count, and a concurrent term of 5 years with 5 years of post-release supervision on the third count. (*Id.* at 528-30).

## III.   **Direct Appeal**

Petitioner filed a timely appeal with the Supreme Court of the State of New York Appellate Division, Fourth Department ("Fourth Department"), arguing: (1) the time periods specified in the two course of sexual conduct counts were overbroad and prevented the preparation of an adequate defense, and that the two counts were duplicitous; (2) the verdict for all three counts was not supported by legally sufficient evidence; (3) the trial court imposed a harsh and severe sentence without considering the extraordinary

circumstances present in the case; (4) prosecutorial misconduct during the summation for (a) vouching for the victim's credibility and (b) stating facts not in evidence; and (5) ineffective assistance of counsel for (a) not moving to sever the counts in the Indictment related to the two victims, (b) failing to object to the admission of the text messages between T.E. and Donald, (c) not calling police officers regarding the victim's reputation for truthfulness, and (d) failing to make appropriate objections to preserve several claims for appellate review. (Dkt. 11-2 at 313-50).

On October 3, 2014, the Fourth Department affirmed the judgment of conviction. *People v. Errington*, 121 A.D.3d 1553 (4th Dep't 2014). As to the broad time periods claim, the Fourth Department held:

> Considering that the charged crimes occurred when the victim was as young as six years old, and that the victim was 17 years old at the time of trial, we conclude that the time periods alleged in counts one and two were not so excessive that, on its face, [they are] unreasonable and dismissal should follow.

*Id.* at 1554 (alteration in original) (quotation omitted). Additionally, the court found Petitioner's duplicity claim regarding the two counts of course of sexual conduct was unpreserved and in any event without merit, and that the evidence on all three counts was legally sufficient. *Id.* at 1554-55.

On October 31, 2014, Petitioner filed a counseled application for leave to appeal with the New York Court of Appeals arguing only the duplicity claim. (Dkt. 11-2 at 400-01). On January 12, 2015, Petitioner filed a *pro se* leave application raising five claims: (1) the Indictment period was unreasonably broad; (2) O'Neil's testimony regarding Petitioner's admissions should have been excluded as hearsay; (3) the evidence

was insufficient; (4) the prosecutors engaged in misconduct; and (5) Judge Griffith should have recused himself because he handled a prior matter in family court between Donald and Petitioner and had ruled against Petitioner. (*Id.* at 404-19). Leave to appeal was denied on June 29, 2015. *People v. Errington*, 25 N.Y.3d 1163 (2015).

## IV.    State Court Motion to Vacate

On September 20, 2016, Petitioner, proceeding *pro se*, filed a motion to vacate her conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10 alleging ineffective assistance of counsel for failure to advise Petitioner of her right to testify at trial. (Dkt. 11-2 at 423-27). Petitioner submitted her own affidavit with the motion contending that she told trial counsel before and during the trial that she wanted to testify, but trial counsel advised Petitioner that her testimony was not necessary and failed to tell her that she had a right to testify and could do so even over counsel's objection. (*Id.* at 426-27). Petitioner stated that she would have testified to the following: at no time had she ever performed oral sex on T.E., T.E. had never performed oral sex on her, Petitioner had never discussed the substance of the case with O'Neil and never told O'Neil that she had oral sex with T.E., and the abusive nature of her relationship with Donald. (*Id.* at 425-26).

On January 20, 2017, the trial court denied Petitioner's motion without a hearing pursuant to CPL § 440.30(4)(d). The trial court found that Petitioner's claim was "largely based upon unsubstantiated conclusory allegations." (*Id.* at 433). The Court noted that her affidavit was "the sole proof submitted in support of the motion," that she did not provide "any affirmation from her former attorney, or other independent evidence," and that she

- 8 -

did not provide "any explanation of why any such affirmation or evidence was not attempted to be procured or obtained." (*Id.*).

On February 16, 2017, Petitioner filed a *pro se* application for leave to appeal the order denying her CPL § 440.10 motion with the Fourth Department. (*Id.* at 434). Petitioner's application was denied on August 15, 2017. (*Id.* at 444).

## V.    **Habeas Petition**

On March 23, 2017, Petitioner, proceeding *pro se*, filed the instant Petition for Writ of Habeas Corpus asserting the following claims: (1) the Indictment provided insufficient notice of the specific time periods in which the alleged criminal activity occurred; (2) the verdict was not supported by legally sufficient evidence; (3) the prosecutor committed misconduct during summation; and (4) trial counsel was ineffective for failing to advise Petitioner of her right to testify, move to sever counts, object to the admission of text messages, object to the Indictment being duplicitous, and object to prosecutorial misconduct during summation. (Dkt. 1). After seeking an extension of time from the Court, Respondent submitted a timely memorandum in opposition to the Petition (Dkt. 10) as well as an answer containing the state court record (Dkt. 11) on August 18, 2017. On August 15, 2017, retained counsel for Petitioner appeared in the instant action. Petitioner filed a counseled reply on September 22, 2017, addressing two of the Petition's claims: (1) the insufficiency of the Indictment, and (2) ineffective assistance of counsel for the failure to advise Petitioner of her right to testify. (Dkt. 14).

On May 1, 2019, the Court issued an order directing Respondent to obtain an affidavit from trial counsel responding to Petitioner's allegations of ineffective assistance

of counsel by no later than May 31, 2019. (Dkt. 16). On May 8, 2019, Respondent filed a motion for reconsideration of the May 1, 2019, Order. (Dkt. 17). That same day, the Court held the deadline for filing the affidavit in abeyance (Dkt. 18), and on May 23, 2019, Petitioner submitted a memorandum opposing the motion for reconsideration. (Dkt. 19). Oral argument was conducted before the undersigned by video on July 30, 2019. (Dkt. 23).

## DISCUSSION

### I.   Motion for Reconsideration

#### A.   Legal Standard

The Federal Rules of Civil Procedure do not recognize a motion for "reconsideration." *See Lopez v. Goodman*, No. 10-CV-6413 CJS, 2013 WL 5309747, at *1 (W.D.N.Y. Sept. 20, 2013) (citing *Hamilton v. Williams*, 147 F.3d 367, 371 n.10 (5th Cir. 1998)). "Since the Federal Rules of Civil Procedure do not expressly provide for motions for reconsideration, such a motion may be construed as a motion to alter or amend judgment under Rule 59(e) or Rule 60(b)." *Hill v. Washburn*, No. 08-CV-6285-CJS, 2013 WL 5962978, at *1 (W.D.N.Y. Nov. 7, 2013) (citing *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989)).

As noted by the Second Circuit Court of Appeals, "[t]he standard for granting a [motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked— matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "The major

grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Virgin Atl. Airways v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotations and citations omitted). "With respect to the third of these criteria, to justify review of a decision, the Court must 'have a clear conviction of error on a point [of law] that is certain to recur.'" *Turner v. Vill. of Lakewood*, No. 11-CV-211-A, 2013 WL 5437370, at *3-4 (W.D.N.Y. Sept. 27, 2013) (quoting *United States. v. Adegbite*, 877 F.2d 174, 178 (2d Cir. 1989)). "These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court." *Boyde v. Osborne*, No. 10-CV-6651, 2013 WL 6662862, at *1 (W.D.N.Y. Dec. 17, 2013) (quoting *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999)).

## B.    Order to Produce Affidavit

Respondent contends the Court's May 1, 2019, Order, contains a clear error of law. (Dkt. 17-2 at 7-10). For the following reasons, the Court rescinds its May 1, 2019, Order.

The Court issued the Order in response to Petitioner's allegation that she was deprived of her constitutional right to the effective assistance of counsel because trial counsel allegedly failed to advise her of her right to testify. Petitioner claims it was her desire to testify at trial and that trial counsel never advised her that it was her decision to make. (Dkt. 14 at 29). Relying on *Sparman v. Edwards*, 154 F.3d 51 (2d Cir. 1998), which holds "a district court facing the question of constitutional ineffectiveness of counsel should, except in highly unusual circumstances, offer the assertedly ineffective attorney an opportunity to be heard and to present evidence, in the form of live testimony, affidavits,

or briefs," *id.* at 52, the Court issued the May 1, 2019, Order directing Respondent to obtain an affidavit from Petitioner's trial counsel (Dkt. 16).

However, the Court now recognizes binding precedent holding that "this Court's 'review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.'" *Wearing v. Lavalley*, No. 10-CV-8307 PO, 2015 WL 6738327, at \*4 (S.D.N.Y. Nov. 4, 2015) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)), *appeal dismissed*, 2017 WL 5157427 (2d Cir. Apr. 3, 2017); *see Pinholster*, 563 U.S. at 203 n.20 ("[B]ecause [the petitioner] has failed to demonstrate that the adjudication of his claim based on the state-court record resulted in a decision 'contrary to' or 'involv[ing] an unreasonable application' of federal law, a writ of habeas corpus 'shall not be granted' and our analysis is at an end. 28 U.S.C. § 2254(d). We are barred from considering the evidence [the petitioner] submitted in the District Court that he contends additionally supports his claim."); *Jackson v. Conway*, 763 F.3d 115, 135 (2d Cir. 2014) ("[T]he rule expressed in *Pinholster* generally prohibits us from relying on evidence beyond the state court record to reach our result." (quotation omitted)).

Whether this precedent applies necessarily turns on whether the state court adjudicated Petitioner's claim on the merits. The state court denied Petitioner's claim pursuant to N.Y. CPL § 440.30(4)(d).[2] Most courts in this Circuit have held that a decision

---

[2]    Section 440.30(4)(d) provides: "Upon considering the merits of the motion, the court may deny it without conducting a hearing if . . . [a]n allegation of fact essential to support the motion (i) is contradicted by a court record or other official document, or is made solely by the defendant and is unsupported by any other affidavit or evidence, and (ii) under these and all the other circumstances attending the case, there is no reasonable possibility that such allegation is true."

under § 440.30(4)(d) is merits-based. *See Skinner v. Duncan*, No. 1:01-CV-6656, 2003 WL 21386032 at *28 (S.D.N.Y. June 17, 2001) ("[B]ecause C.P.L. § 440.30 refers to the procedures for deciding C.P.L. § 440 motions, and C.P.L. § 440.30(4) specifically states that '*[u]pon considering the merits of the motion,* the court may deny it without conducting a hearing' if certain conditions exist, that is a merits based decision, not a procedural bar." (emphasis in original)); *see also Martinez v. Graham*, No. 13 Civ. 8914 (AJN)(HBP), 2018 U.S. Dist. LEXIS 11701, at *44 n.9 (S.D.N.Y. Jan. 23, 2018) ("Although there was formerly a split of authority as to whether Section 440.30(4)(d) gives rise to a procedural bar, it now appear[s] settled that a decision rejecting a 440.10 motion on the basis of Section 440.30(4)(d) is a decision on the merits."); *Munck v. Amoia*, No. 9:16-CV-0118 (GLS), 2016 WL 4275737, at *4 n.3 (N.D.N.Y. Aug. 12, 2016) ("This Court agrees with the decisions finding that a state court rejection of a CPL § 440.10 motion pursuant to CPL § 440.30(4)(d) is merit based."); *cf. Garcia v. Portuondo*, 104 F. App'x 776, 779 (2d Cir. 2004) ("We agree with the District Court that, based upon the plain language of § 440.30(4)(c), the state court's decision was a judgment on the merits."). The Court follows the weight of the case law in this Circuit[3] and finds that a decision pursuant to CPL

---

[3]    The Court recognizes that some courts have held that a decision under § 440.30(4)(d) is an adequate and independent state procedural bar to habeas review. *See Ahmed v. Portuondo*, No. 99 CV 5093(NG), 2002 WL 1765584, at *2 (E.D.N.Y. July 26, 2002) (holding petitioner's ineffective assistance of counsel claim was subject to a procedural bar because the trial court "relied on the adequate and independent state ground that petitioner failed to support this claim with any evidence or sworn affidavits beyond his own"); *Barton v. Walker*, 99 Civ. 12016, 2001 WL 262692 at *3 (S.D.N.Y. Mar. 15, 2001) (preliminary finding that petitioner's claim procedurally barred where state court denied claim as "'unsupported beyond the conclusory allegations offered by the defendant' . . . pursuant to CPL § 440.30(4)(d)."); *Dunavin v. Leonardo*, No. 95 CV 296, 1997 WL

§ 440.30(4)(d) is merits based. Indeed, Petitioner's counsel agreed during oral argument that the decision was merits based. Accordingly, the adjudication at issue here was on the merits, and the Court finds it would be improper to order Respondents to obtain an affidavit from Petitioner's trial counsel because no such affidavit was before the state court when it made its adjudication.

Petitioner argues the Court's reading of *Pinholster* is too broad. She cites to *Hernandez v. Larkin*, No. 12 Civ. 8090(AJN)(SN), 2013 WL 4453316 (S.D.N.Y. Aug. 19, 2013), where the court stated "[a] *Sparman* hearing is necessary before a court grants a petition for *habeas* relief based upon ineffective counsel, but not before a court denies such a claim." *Id.* at *16. However, *Hernandez* does not address *Pinholster*, and the cases it relies on either do not address *Pinholster*, *see McCullen v. Lempke*, 10 Civ. 0389T, 2011 WL 4074450, at *11 n.6 (W.D.N.Y. Sept. 13, 2011) ("Because Petitioner's ineffective assistance of counsel claim provides no basis for habeas relief and is dismissed in its entirety, Petitioner's request for a hearing, pursuant to [*Sparman*], with respect to his ineffective assistance of counsel claim is also denied." (citation omitted)), or pre-date *Pinholster*, *see Jones v. Donnelly*, 487 F. Supp. 2d 418, 420 (S.D.N.Y. 2007); *Jolaoso v. United States*, 142 F. Supp. 2d 306, 308 n.2 (E.D.N.Y. 2001). Moreover, at least one court in this Circuit that has directly addressed how *Pinholster* impacts *Sparman* found "it difficult to discern a rationale under which *Sparman* survives post-*Pinholster* with regard

---

151771 at *12 (N.D.N.Y. Mar. 31, 1997) (state court's denial of claim with citation to C.P.L. § 440.30(4)(d) "constitutes the invocation of a procedural bar to a petitioner's [habeas] claims.").

to ineffective assistance of counsel claims adjudicated on the merits in the State courts." *Pepe v. Walsh*, 31 F. Supp. 3d 441, 471 (N.D.N.Y. 2012), *aff'd*, 542 F. App'x 54 (2d Cir. 2013); *see Ridgeway v. Zon*, 424 F. App'x 58, 60 (2d Cir. 2011) ("[A]dditional information proffered before the District Court appears to lend some credence to [the petitioner]'s claims. . . . However, the Supreme Court has now apparently foreclosed that avenue for us here.").

At oral argument, Petitioner suggested that it may be appropriate for the Court to order a hearing pursuant to *Sparman* and then hold the Petition in abeyance to allow Petitioner to attempt to renew her CPL § 440.10 motion in state court by claiming that trial counsel's testimony at the hypothetical hearing is newly discovered evidence. Petitioner cites no case where a court followed such a procedure, nor has the Court's research so found. Additionally, New York courts only entertain renewal motions when the evidence was not previously available to the movant. *See* CPL § 440.10(g) (stating the court may vacate a judgment if "[n]ew evidence has been discovered since the entry of a judgment . . . which could not have been produced by the defendant."). Here, the prospect of trial counsel's testimony is not new.

Therefore, the Court rescinds its May 1, 2019, Order.

## II.   Habeas Petition

### A.   Legal Standard

"Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d)(1), a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009) (quotation omitted). "The question is 'not whether the state court was incorrect or erroneous in rejecting petitioner's claim, but whether it was objectively unreasonable in doing so.'" *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 367 (E.D.N.Y. 2013) (quoting *Ryan v. Miller*, 303 F.3d 231, 245 (2d Cir. 2002)). "The petition may be granted only if 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Id.* (alteration in original) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

**B.     Ineffective Assistance of Counsel—Right to Testify**

Petitioner argues she was denied effective assistance of counsel because her attorney did not inform her that she had the right to testify. For the reasons that follow, the Court denies the Petition as to this claim.

"The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding." *Lafler v. Cooper*, 566 U.S. 156, 165 (2012). "Pursuant to the well-known two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984), a habeas petitioner alleging ineffective assistance of counsel 'must demonstrate (1) that his counsel's performance fell below what could be expected of a reasonably competent practitioner; and (2) that he was prejudiced by that substandard performance.'" *Woodard v. Chappius*, 631 F. App'x 65, 66 (2d Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 241 (2009)). "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163; *see Hill v. Lockhart*, 474

U.S. 52, 59 (1985) (holding a petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial"). Where a state court has rejected the ineffective assistance of counsel claim, a "doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt" applies on federal habeas review. *Burt v. Titlow*, 571 U.S. 12, 15 (2013). "[T]he burden to show that counsel's performance was deficient rests squarely on the defendant.... [T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Burt*, 571 U.S. at 22-23 (quotations and original alterations omitted).

"[A] defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." *Rock v. Arkansas*, 483 U.S. 44, 49 (1987). "[T]he decision whether to testify belongs to the defendant and may not be made for him by defense counsel." *Brown v. Artuz*, 124 F.3d 73, 78 (2d Cir. 1997). "Although counsel . . . may strongly advise the course that counsel thinks best, counsel must inform the defendant that the ultimate decision whether to take the stand belongs to the defendant, and counsel must abide by the defendant's decision on this matter." *Id.* at 79. "[A]ny claim by the defendant that defense counsel has not discharged this responsibility—either by failing to inform the defendant of the right to testify or by overriding the defendant's desire to testify—must satisfy the two-prong test established in [*Strickland*], for assessing whether counsel has rendered constitutionally ineffective assistance." *Id.*; *see Nappy v. United States*, Nos. 13 CV 5888(CM), 94 CR 656, 2014 WL 6792001, at *10 (S.D.N.Y. Nov. 21, 2014) ("A

defendant's claim of denial of the right to testify is reviewed in the same manner as an ineffective assistance of counsel claim.").

Petitioner contends the state court's denial of Petitioner's claim that trial counsel failed to inform her of her right to testify was unreasonable. (Dkt. 14 at 29-30). The state court decided the motion on the papers and found that Petitioner's ineffective assistance of counsel claim was "largely based upon unsubstantiated conclusory allegations." (Dkt. 11-2 at 433). It noted that Petitioner did not provide "any affirmation from her former attorney, or other independent evidence," and that she also did not provide "any explanation of why any such affirmation or evidence was not attempted to be procured or obtained." (*Id.*). Accordingly, the state court held Petitioner did not meet her burden of showing trial counsel failed to advise her of her right to testify. (*Id.*). Petitioner's leave to appeal the decision was denied. (*Id.* at 444).

"New York courts do not inflexibly require that defendants claiming ineffective assistance must present a supporting affidavit from the challenged attorney." *Jenkins v. Greene*, 630 F.3d 298, 303 (2d Cir. 2010). "New York courts have expressly stated that *either* an affidavit from counsel *or* an explanation of why such an affidavit is not available is acceptable." *Id.*; *see People v. Morales*, 58 N.Y.2d 1008, 1009 (1983) ("Because defendant failed to submit an affidavit from the attorney who represented him at plea and sentence or offer an explanation of his failure to do so, it cannot be said that as to defendant's failure to appeal the *coram nobis* Judge erred in denying the application without a hearing."). Some New York courts have even held that a defendant is not required to submit an affidavit from trial counsel or offer an explanation in circumstances

where the defendant's claim is hostile to the trial attorney. *See People v. Washington*, 128 A.D.2d 1397, 1399 (4th Dep't 2015) ("[D]efendant's application is adverse and hostile to his trial attorney. To require the defendant to secure an affidavit, or explain his failure to do so, [would be] wasteful and unnecessary." (alterations in original) (quoting *People v. Radcliffe*, 298 A.D.2d 533, 534 (2d Dep't 2002))); *see also People v. Sherk*, 269 A.D.2d 755, 755 (4th Dep't 2000) ("[D]efendant asserts that trial counsel failed to relay a plea offer to him and that he was prejudiced thereby because he would have accepted the offer. That assertion supports his contention that he was denied meaningful representation.").

Respondent argues the state court's decision was reasonable because the only evidence Petitioner presented was her own statement that trial counsel failed to advise her of her right to testify, and that her self-serving statement lacks credibility. (Dkt. 10 at 47). While in many of the cases holding the defendant did not need to secure an affidavit from trial counsel to be entitled to a hearing, the defendant's motion was supported by more than his own statement, *see Washington*, 128 A.D.2d at 1398 (motion had affidavit from potential trial witness attached); *Radcliffe*, 298 A.D.2d at 534 (motion had affidavits of defendant's mother and friend attached), at least one New York court—the Fourth Department, where Petitioner's appeal was denied—has found a sworn statement from the defendant regarding trial counsel's failure to advise the defendant is enough for a court to require a hearing on the matter, *see Sherk*, 269 A.D.2d at 755 ("Defendant's sworn statement raises a factual issue that requires a hearing."). Petitioner also argues, and the Court agrees, that in situations such as this, where the conversations would likely have

taken place in the presence of only Petitioner and trial counsel, other evidence would have been difficult if not impossible for Petitioner to ascertain.[4] (Dkt. 14 at 31).

However, the Court need not determine whether the record before the state court reasonably showed that trial counsel discharged her responsibility because even if it did not, Petitioner has failed to establish prejudice resulting from trial counsel's alleged failure to inform her of her right to testify. *See United States v. Caracappa*, 614 F.3d 30, 49 (2d Cir. 2010) ("Even if [trial counsel] was required to explicitly inform [the petitioner] of his right to testify, [the petitioner] did not establish that the outcome of the trial could have been different had he testified." (quotation omitted)).

To demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "As the Second Circuit has stated in the right-to-testify context, 'any probability of an acquittal . . . must be based on an assessment that, if [petitioner] had testified, the jury would have credited his testimony, notwithstanding the substantial evidence against him.'" *Williams v. United States*, Nos. 00

---

[4]    At oral argument, Respondent suggested that Petitioner could have obtained affidavits from friends and family with whom she talked about this issue. However, Petitioner has not indicated that she discussed this issue with anyone other than her attorneys.

Petitioner also notes that the state court trial transcript does not contain a colloquy where the trial court ascertained that trial counsel had informed Petitioner of her right to testify. (Dkt. 14 at 31 n.5). However, "we agree with those courts that place no general obligation on the trial court to inform a defendant of the right to testify and ascertain whether the defendant wishes to waive that right." *Brown*, 124 F.3d at 79.

Cr. 1008(NRB), 09 Civ. 2179 (NRB) (Xavier Williams), 09 Civ. 3493(NRB) (Michael Williams), 09 Civ. 2535(NRB) (Elijah Bobby Williams), 2011 WL 3296101, at *10 n.12 (S.D.N.Y. July 28, 2011) (alterations in original) (quoting *Rega v. United States*, 263 F.3d 18, 22 (2d Cir. 2001)).

Petitioner argues her testimony would have established the duress defense.[5] (Dkt. 14 at 32). She states she would have described how Donald Errington became more controlling over the course of their marriage, that he stated he would kill her or take away her children when Petitioner threatened to go to the authorities, that those threats caused her to perform oral sex on Donald together with T.E., and that she did not perform oral sex on T.E. (Dkt 11-2 at 425-27; Dkt. 14 at 33). However, Petitioner concedes that much if not all of the testimony she would have provided was already in the trial record. (Dkt. 14 at 32-33). For example, in both a written statement and a video interview with the police that was played for the jury, Petitioner stated that she participated in T.E.'s sexual abuse on only a few occasions and that she did so only because her husband forced her to participate. (Dkt. 11-3 at 233-34, 285-86, 318). The videotaped interview also contained statements by Petitioner that she had never engaged in direct oral sexual intercourse with T.E. (*See id.* at 427). Petitioner's version of events was introduced at trial through her out-of-court statements, albeit without subjecting Petitioner to cross-examination.

---

[5]    Under New York law, duress is defined as "an affirmative defense that the defendant engaged in the proscribed conduct because [s]he was coerced to do so by the use or threatened imminent use of unlawful physical force upon him or a third person, which force or threatened force a person of reasonable firmness in his situation would have been unable to resist." N.Y. Penal Law § 40.00.

Relying on an Eleventh Circuit case, Petitioner contends that these out-of-court statements are not an adequate substitute for her in-person testimony. (Dkt. 14 at 33-34). In *Nichols v. Butler*, 953 F.2d 1550 (11th Cir. 1992), the court held the petitioner was prejudiced by not testifying because in a case where the question is "not whether a crime was committed, but whether *the defendant* was the person who committed the crime," a defendant's testimony is especially important. *Id.* at 1553-54. Additionally, the court found the case presented a "very close case" because the only evidence against the petitioner was "an eyewitness identification of him by a store employee who had glimpsed him only briefly." *Id.* at 1553-54.

The Court is not persuaded by Petitioner's reliance on *Nichols*. Even if *Nichols* were binding precedent, the instant matter is not a case where there was some question of mistaken identification. Petitioner admitted several times that she engaged in the joint sexual acts performed on Donald, and she contends one of the acts she was accused of—performing oral sex on T.E.—never happened. (Dkt. 11-2 at 425-27). Additionally, this was not a "very close case" with little evidence on the record. The jury was presented with the following: two confessions by Petitioner, O'Neil's testimony that Petitioner told her multiple times she had performed oral sex on T.E. (Dkt. 11-3 at 256, 259), and eyewitness testimony by T.E. (Dkt. 11-3 at 356-59, 371). Moreover, one of the confessions was an hour-and-a-half video interview of Petitioner that was played for the jury in open court (*id.* at 316-18), allowing the jury to hear Petitioner explain what happened in her own words without requiring Petitioner to undergo cross-examination.

In addition, "[t]he question of whether the defendant was acting under duress is primarily one of credibility, which is to be determined by the [finder of fact]." *People v. McKinnon*, 78 A.D.3d 864, 864 (2d Dep't 2010) (quotation omitted). The testimony Petitioner contends she would have provided consists of "self-serving statements that [s]he was coerced into committing the crimes of which [s]he was convicted" that the jury would have been entitled to discredit. *People v. Hammond*, 84 A.D.3d 1726, 1726 (4th Dep't 2011); *People v. Maerling*, 46 N.Y.2d 289, 299 (1978) ("neutral and self-serving statements do not bear the same guarantee of reliability as do the disserving ones"). In other words, Petitioner's "proposed testimony appears to provide 'no evidence of significance that is not wholly dependent on either [her] credibility or on the incredibility of the witnesses against [her],'" and she "cannot establish that had [she] testified, the result at trial would have been different." *Capalbo v. United States*, Nos. 10 Civ. 2563(LAP)(JLC), 02 Cr. 1237(RJH), 2012 WL 1288486, at *15 (S.D.N.Y. Apr. 12, 2012) (quoting *Rega v. United States*, 263 F.3d 18, 22 (2d Cir. 2001)), *report and recommendation adopted*, 2012 WL 3779190 (S.D.N.Y. Aug. 31. 2012). "Given the circumstances presented by [Petitioner]'s case, and even assuming there was any deficiency in counsel's advice regarding petitioner's right to testify, the Court cannot find that such shortcoming prejudiced [Petitioner]'s defense." *White v. Greene*, No. 05-CV-0545(VEB), 2010 WL 2104290, at *5 (W.D.N.Y. May 24, 2010); *see Brown v. Artuz*, 124 F.3d 73, 81 (2d Cir. 1997) ("Since the only testimony [Petitioner] claims he wanted to present would not have aided his justification defense, [Petitioner] was not prejudiced by the purported failure of his trial counsel to inform him of his personal right to testify.").

Accordingly, the Court finds this claim does not entitle Petitioner to habeas relief.

## C.   **Due Process Claim**

Petitioner also contends she was denied due process of law because the Indictment's terms were so general that she did not have the opportunity to present a sufficient defense against Counts One and Two of the Indictment. (Dkt. 14 at 34-39). Respondent contends that Petitioner's due process claim as to the second count of the Indictment was not adequately exhausted, and that in any event the Petition does not adequately set forth a due process violation. The Court finds Petitioner is not entitled to habeas relief as to this claim.

Respondent argues that Petitioner did not raise adequate notice in her Court of Appeals leave applications regarding the second course of sexual conduct count.[6] The Court need not decide this issue because even if the claim was exhausted, it fails on the merits.

Petitioner argues that the time periods alleged in Counts One and Two of the Indictment, a five-year period and a two-year period respectively, were too broad and accordingly violate due process. (Dkt. 14 at 34-39). The Court finds the time periods were not too broad for the reasons that follow.

"[A]n indictment must give a defendant adequate notice of the charges against him so that he is able to mount an effective defense." *Alston v. Donnelly*, 461 F. Supp. 2d 112, 126 (W.D.N.Y. 2006) (citing *Russell v. United States*, 369 U.S. 749, 763-64 (1963)). "Typically, to state an offense, an indictment need only . . . , if necessary to apprise the

---

[6]     Respondent also argues Petitioner failed to exhaust the adequate notice claim as to her sexual abuse conviction (Dkt. 10 at 21-22), which Petitioner does not contest.

defendant of the nature of the accusation against him, state time and place in approximate terms." *United States v. Frias*, 521 F.3d 229, 235 (2d Cir. 2008) (quotation omitted). A habeas court can only review claims based on a defective indictment "if the indictment fails to satisfy the basic due process requirements: notice of 'the time, place, and essential elements of the crime.'" *Scott v. Superintendent, Mid-Orange Corr. Facility*, No. 03-CV-6383, 2006 WL 3095760, at *6 (E.D.N.Y. Oct. 31, 2006) (quoting *Carroll v. Hoke*, 695 F. Supp. 1435, 1438 (E.D.N.Y. 1988), *aff'd*, 880 F.2d 1318 (2d Cir. 1989)).

Although the Second Circuit has yet to address the issue, courts in this Circuit have consistently upheld indictments with broad timespans in child sex abuse cases because "young victims often do not remember the exact date of when an alleged offense occurred."[7] *Rodriguez v. Hynes*, No. CV-94-2010 (CPS), 1995 WL 116290, at *4 (E.D.N.Y. Feb. 27, 1995), *aff'd*, 104 F.3d 356 (2d Cir. 1996); *Roman v. Napoli*, No. 08-CV-6561 MAT, 2010 WL 4922627, at *8 (W.D.N.Y. Dec. 2, 2010) (collecting cases). Other circuits have also upheld the constitutionality of indictments in child sex abuse cases that identify a period of time instead of a specific date. *See Hunter v. New Mexico*, 916 F.2d 595, 600 (10th Cir. 1990) ("We have reviewed defendant's argument that the information was deficient in failing to identify specific dates for the crimes alleged and do not find it persuasive."); *Valentine v. Konteh,* 395 F.3d 626, 632 (6th Cir. 2005) ("This

---

[7]    Petitioner points out that during T.E.'s testimony, "when the subject turned to when in time [the] alleged activities occurred, [T.E.'s] testimony lost virtually all specificity." (Dkt. 14 at 37). Although apparently intended as an argument in support of Petitioner's position, the Court finds T.E.'s inability to recall specific dates demonstrates why courts routinely uphold indictments with broad time periods in child sex abuse cases.

Court and numerous others have found that fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements.") (collecting cases); *Fawcett v. Bablitch*, 962 F.2d 617, 619 (7th Cir. 1992) (rejecting a due process challenge to an indictment that set forth a six-month period of time during which the defendant allegedly sexually abused a minor child, and finding that the indictment "afforded [the defendant] notice sufficient to permit him to defend against the charge").

Petitioner argues that the five-year and two-year periods listed in the Indictment made it impossible for Petitioner to craft an adequate defense, and that the time periods in the cases relied on by the state court and Respondent do not come close to those in Petitioner's Indictment. (Dkt. 14 at 35-36). However, the Court notes several cases upholding indictments with time periods similar to those at issue here. *See People v. Green*, 17 A.D.3d 1076, 1077 (4th Dep't 2005) ("Because defendant was charged with a course of conduct crime, the usual requirements of specificity with respect to time do not apply, and the 36-month time period covered by the indictment is reasonable." (citation omitted)); *People v. Palmer*, 7 A.D.3d 472, 472 (4th Dep't 2004) ("Although the indictment, even as augmented by the People's bill of particulars, did not specify the dates, times or locations of any specific acts, the crime of course of sexual conduct against a child is a continuing crime, to which the usual requirements of specificity do not apply. The 3½-year period covered by the indictment, during which the acts allegedly occurred on a regular basis, was reasonable under all the circumstances." (citations omitted)); *see also Coles v. Smith*, 577 F. App'x 502, 510 (6th Cir. 2014) (holding that state court did not unreasonably conclude that the charging document, which alleged assaults that took place on unspecified dates

over a three-and-a-half year period, provided petitioner sufficient notice of the charges);

*Bruce v. Welch*, 572 F. App'x 325, 330-31 (6th Cir. 2014) (holding that state court did not

unreasonably conclude that the charging document, which alleged assaults that took place

on unspecified dates over a four year period, provided sufficient notice of the charges);

*Hunter v. New Mexico*, 916 F.2d 595, 600 (10th Cir. 1990) (upholding an indictment with

a three year time period). Additionally, Petitioner does not point to any Supreme Court

case finding an indictment with similar factual circumstances unconstitutional, nor has the

Court's research so found. Accordingly, the Court finds the trial court's rejection of

Petitioner's argument was not "contrary to, [nor] involved an unreasonable application of,

clearly established Federal law." *Knowles*, 556 U.S. at 121 (quotation omitted).[8]

For the foregoing reasons, the Court finds that Petitioner is not entitled to habeas

relief pursuant to her due process claim.

### D.    Remaining Claims

Respondent claims Petitioner failed to exhaust the remaining claims raised in the

*pro se* Petition (Dkt. 10 at 38-39), a contention Petitioner conceded at oral argument.

Accordingly, the Court finds Petitioner's remaining claims are procedurally barred. *See*

---

[8]    Petitioner argues that one case cited by the Fourth Department, *People v. Devane*, 78 A.D.3d 1586 (4th Dep't 2010), is distinguishable because the *Devane* defendant never moved for a bill of particulars, whereas Petitioner did and had her motion denied by the trial court. (Dkt. 14 at 35-36). However, the *Devane* court also addressed the merits of the defendant's claim that the indictment was insufficient and held "[c]ourse of sexual conduct against a child in the first degree is a continuing offense to which the usual requirements of specificity with respect to time do not apply." *Devane*, 78 A.D.3d at 1587 (original alterations and quotation omitted).

*Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (finding when "the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," the Court must deem the claims procedurally defaulted).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court grants the motion for reconsideration (Dkt. 17), and denies the Petition for Writ of Habeas Corpus (Dkt. 1). The Clerk of Court is instructed to close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: August 5, 2019
     Rochester, New York